

Rᴇᴢᴀsʜ and another, Appellants, vs. Bᴀɴᴋ ᴏғ Two Rɪᴠᴇʀs, Respondent.

*February 7—March 5, 1929.*
*September 14—October 8, 1929.*

For the appellants there were briefs by *Minahan & Duquaine,* attorneys, and *Jerome R. North,* of counsel, all of Green Bay, and oral argument by *Mr. E. M. Duquaine* and *Mr. North.*

For the respondent there was a brief by *Nash & Nash* of Manitowoc, and oral argument by *A. L. Nash.*

The following opinion was filed March 5, 1929:

ESCHWEILER, J. Mr. Chief Justice VINJE taking no part in this appeal, and Mr. Justice ROSENBERRY, Mr. Justice DOERFLER, and Mr. Justice STEVENS being of the opinion that the judgment should be affirmed, Mr. Justice OWEN, Mr. Justice CROWNHART, and the writer that it should be reversed and a new trial granted, it follows under the rule that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was granted on April 30, 1929, and the cause was reargued on September 14, 1929.

The following opinion was filed October 8, 1929:

## On rehearing.

Action for damages alleging negligence in the handling and management of pledged collateral securities. In March, 1925, plaintiff put up a certificate of deposit of the defendant bank for $9,000 as collateral to credits advanced and to be advanced by the defendant to the plaintiff. Early in August plaintiff ordered the purchase, through a broker

representing Hyney, Emerson & Co. in Chicago, of certain stocks and $7,000 in bonds of what were commonly known as Jewelers' Building bonds. The broker transmitted the order to Hyney, Emerson & Co., who, under date of August 5, 1925, issued and delivered by mail to the plaintiff an interim receipt as follows:

"No. 2739. $7,000.

INTERIM RECEIPT
Issued by
Hyney, Emerson & Co.
Municipal BONDS corporation,
39 South La Salle Street,
Chicago..

"This is to certify that Joe Rezash, Elkhart Lake, Wisconsin, is entitled to receive seven thousand dollars principal amount of Jewelers Building first mortgage bonds dated June 1, 1925, bearing interest at the rate of 6% with December 1, 1925, and all subsequent coupons attached, said bonds to be delivered when, as, and if received in definite form upon surrender of this receipt.

"HYNEY, EMERSON & Co.
"By A. B. Wilson, Treasurer.

"Attest:
"H. Hollembeck, Cashier.
"Chicago, Aug. 5, 1925."

Inclosed with such interim receipt were invoices for the stock and bonds and a letter, which letter reads as follows:

"August 5, 1925.

"Mr. J. Rezash, % Elkhart Sanitarium,
"Elkhart Lake, Wisconsin.

"Dear Mr. Rezash: In accordance with advices from our Mr. Corbett, we are shipping you today by registered mail insured under separate cover twenty shares Hyney, Emerson & Co. preferred stock, price 99.50 and accrued dividends; also a bonus of twenty shares common stock, together with our interim certificate covering $7,000 Jewelers Building first mortgage 6s, price 99.50 and interest.

"In this connection we are taking the liberty of sending you our interim certificate covering the Jewelers Building 6s, as it will be possibly ten days before these permanent bonds are ready for delivery, which procedure we trust you will find satisfactory.

"Memorandum bills attached hereto and covering these transactions show amounts due us of $1,990 and $7,000, for which we would be pleased to receive your check. Please note that we have also stopped interest on these transactions as of July 1 so that your money has been drawing interest from that date. Permanent bonds of the Jewelers Building issue will be sent you just as soon as they are ready for delivery.

"Assuring you of our appreciation for this business and the courtesy extended our Mr. Corbett, and trusting we may have the pleasure of continuing to serve you in part of your future investment requirements, we are,

"Very truly yours,

"HYNEY, EMERSON & Co.

"By H. Hollembeck."

Plaintiff took his interim receipt, invoices, and letter so received to defendant's cashier, showed them to him, and inquired if the bonds were good. He proposed to pay for the stock and bonds by substituting the same as collateral with the bank in place of the $9,000 certificate of deposit, and turning over the proceeds of the certificate of deposit to pay for the stock and bonds.

The cashier was unacquainted with Hyney, Emerson & Co. or the value of the bonds, but promised to look up the bonds for the plaintiff. The plaintiff went away and came back in a day or two thereafter. In the meantime the cashier made some investigation of the bonds, and when plaintiff returned he showed plaintiff a circular concerning them and said he thought they were good. Plaintiff then delivered the interim receipt, letter, and invoices of Hyney, Emerson & Co. to the cashier, and requested that the defendant transmit payment for the bonds and stock to

Hyney, Emerson & Co. from the proceeds of the certificate of deposit, which the defendant did.

Before transmitting the money, however, the defendant took a pledge agreement from the plaintiff, reading as follows:

"Two Rivers, Wis., Aug. 15, 1925.

"To the Bank of Two Rivers: I hand you herewith as collateral security to loans:

"Hyney, Emerson & Co. stock certificate No. 331 for twenty (20) shares common stock.

"Hyney, Emerson & Co. stock certificate No. 292 for twenty (20) shares preferred stock.

"Also Interim certificate No. 2739 issued by Hyney, Emerson & Co. for seven thousand ($7,000) dollars and issued for Jewelers' Building first mortgage bonds dated June 1, 1925.

"Upon receipt of the permanent bonds, you are hereby authorized to send the interim certificate in exchange, duly receipting therefor. JOSEPH REZASH."

Hyney, Emerson & Co. received the payment from the defendant, and replied as follows:

"August 17, 1925.

"Bank of Two Rivers, Two Rivers, Wisconsin.

"Attention Mr. H. C. Wilke, Cashier,

"Dear Sir: We have your letter of the fifteenth inclosing check for $8,990 for the account of Mr. Joe Rezash of Elkhart Lake, Wisconsin.

"As per your request, his Jewelers' Building bonds when ready will be shipped direct to you.

"Very truly yours,
"HYNEY, EMERSON & Co.
"By C. B. Wilson."

When the interim receipt and accompanying letter and invoices were left with the defendant, the plaintiff gave no other instructions than those in the pledge agreement. A few weeks later plaintiff was in defendant's bank and asked the cashier if he had received the bonds. The cashier replied

that he had not, and nothing further was said by the plaintiff. A couple of weeks later plaintiff, being in the bank on other business, inquired if it would not be a good idea to write Hyney, Emerson & Co. about the bonds. Defendant's cashier said he would, and plaintiff paid no attention to the matter after that. The cashier testified that he did so write, but received no reply. However, he was unable to produce a copy of the letter on the trial. Hyney, Emerson & Co. failed early in November, and no bonds had then, or have since, been delivered to the plaintiff or to the defendant for account of plaintiff.

The permanent or definitive Jewelers' Building bonds were not issued until November 19, 1925. On July 31, 1925, temporary bonds, without interest coupons attached, were issued and held in trust by the trustee for the benefit of holders of "interim certificates," which the trustee issued to purchasers of the bonds, which certificates were to the effect that the trustee held such temporary bonds for the *pro rata* benefit of such purchasers until such permanent bonds were delivered.

In the meantime Hyney, Emerson & Co. were procuring for other customers, beginning August 12th and continuing down to October 19th, such interim certificates. Such certificates are admitted to have been satisfactory security, and that if they had been received by the respondent bank or the plaintiff before the failure of Hyney, Emerson & Co., plaintiff would have suffered no loss.

The permanent bonds were not issued by the trustee until after the failure of Hyney, Emerson & Co. It may be conceded that if the bank had made early demand upon Hyney, Emerson & Co. for delivery of the bonds, it would have learned of the issuing of the interim certificates, and would have been able to procure those in lieu of the permanent bonds. The cashier of the bank had twenty years' experience in handling bonds, and testified that he handled

this matter as he had handled other bond matters without any loss.

The case was tried before a jury, which rendered a special verdict as follows:

"(1) Did the defendant Bank of Two Rivers fail to exercise ordinary care and diligence in the following respects:

"(a) In respect to ascertaining seasonably that the trustee's interim certificates were issued and available for delivery to purchasers? *A.* No.

"(b) In respect to making timely demand upon Hyney, Emerson & Co. for delivery to the bank of the bonds called for by their interim receipt to the plaintiff which was dated August 5, 1925? *A.* No.

"(2) If either or both of your answers to the first question are Yes, then answer this:

"Was the failure of the defendant to exercise ordinary care, which is thus found by your affirmative answer or answers to the first question, the proximate cause of the damage which plaintiff sustained in not obtaining from Hyney, Emerson & Co. the bonds called for by said interim receipt? *A.* ———."

Upon such verdict judgment was rendered for the defendant. Plaintiff appeals.

CROWNHART, J. This case was here before (*ante,* p. 420, 223 N. W. 791), the court there being divided equally, resulting in affirming the judgment of the circuit court without opinion. Later a rehearing was granted.

The question here is not whether the cashier was negligent in not properly protecting his bank, but whether he was negligent in complying with the bank's contract obligation to the plaintiff. The contract was .in writing. The interim receipt of Hyney, Emerson & Co. to plaintiff called for delivery of the described bonds "when, as, and if received in definite form upon surrender of this receipt." The pledge agreement signed by the plaintiff provided that "upon re-

ceipt of the permanent bonds, you are authorized to send the interim certificate in exchange, duly receipting therefor."

It is admitted that the permanent bonds were not ready for delivery until after the failure of Hyney, Emerson & Co. Hence it would have been impossible for the defendant to have procured the permanent bonds before such failure. But it is claimed that the trustee of the mortgage was issuing trustee certificates, which were exchangeable for the permanent bonds when ready for delivery, and that if the defendant had acted with reasonable diligence he would have learned of this fact and could have saved plaintiff from loss by procuring and accepting such trustee certificates in lieu of the permanent bonds called for by the interim receipt and the pledge agreement.

A pledgee, in the absence of an express agreement to the contrary, is bound to exercise for the protection of the pledged property that degree of care and diligence which an ordinarily careful and prudent man bestows upon his own property or affairs of like nature and under like circumstances; and his failure to do so is negligence for which he is responsible. 21 Ruling Case Law, pp. 664 *et seq.; Charter Oak Life Ins. Co. v. Smith,* 43 Wis. 329; *McLemore v. Louisiana State Bank,* 1 Otto (91 U. S.) 27, 23 Lawy. Ed. 196. A pledge agreement is to be interpreted and enforced like other contracts, to carry out the intent of the parties.

Here there was an express agreement in writing that the pledgee was to exchange the interim receipt for the permanent bonds with interest coupons attached. The whole transaction was for the benefit of the plaintiff. The bank received no consideration because of it. The plaintiff dealt with Hyney, Emerson & Co. in ordering the securities without consulting the bank in the first instance. The defendant had no knowledge concerning the reliability of Hyney,

Emerson & Co., and had had no business with that company. The plaintiff made no inquiry of the defendant concerning the financial standing of Hyney, Emerson & Co. He never at any time sought to modify his agreement with Hyney, Emerson & Co. No doubt the interim receipt, construed together with the letter accompanying it, entitled the plaintiff to a delivery of the permanent bonds within a reasonable time after purchase. But plaintiff took no steps to procure the permanent bonds, or to learn the reason of their not being delivered until some time in September, and then he only requested the defendant to write to Hyney, Emerson & Co. to find out why the bonds were not delivered. The defendant wrote accordingly but received no reply. It cannot be assumed that if the defendant had acted with reasonable promptness after that, it would have been able to procure trustee certificates from Hyney, Emerson & Co. Hyney, Emerson & Co., between August 12 and October 19, 1925, procured trustee certificates and delivered them to customers, but none were procured after October 19th, when the company's insolvency was close at hand. The facts presented a jury question as to the negligence of the defendant, and it cannot be said that the verdict of the jury is unsupported by credible evidence.

The former mandate is adhered to.